# In the United States Court of Federal Claims

| | |
|---|---|
| KUDU LIMITED II, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | No. 18-cv-118 <br><br> Filed: May 24, 2021 |

### ORDER

Pending before this Court is Defendant's motion for leave to file an amended answer. *See generally* Defendant's Motion for Leave to File Amended Answer (ECF No. 117) (Def. Mot.). Specifically, Defendant moves to amend its answer to include affirmative defenses of equitable estoppel and failure to mitigate damages. *Id.* at 1. Plaintiff opposes Defendant's motion on the grounds that (i) Defendant's proposed affirmative defenses are futile, and (ii) Defendant unduly delayed asserting its affirmative defenses. *See* Plaintiff Kudu Limited II, Inc.'s Response to Defendant's Motion for Leave to File Amended Answer (ECF No. 118) (Pl. Resp.) at 7-20. This Court has considered each of the parties' filings and arguments. For the reasons explained below, Defendant's Motion for Leave to File Amended Answer is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff Kudu Limited II, Inc., (Kudu) is the owner of 56.6 acres of water-fronting property in Orange County, Texas. *See Kudu Ltd. II, Inc. v. United States*, 146 Fed. Cl. 295, 296 (2019); (Corrected) Amended Complaint (ECF No. 58) (Corrected Am. Compl.) ¶3. In 1955, Kudu's

predecessor leased this property to the United States Maritime Administration (MARAD) under lease No. MA-880 (Lease). *See id.* In part, the Lease states,

> The Lessee shall have the sole and exclusive right to police and protect said premises from fire or trespass of any and every kind, to erect and maintain thereon observation or protective towers, electric power and telephone pole lines, to perform thereon all construction work necessary in connection with the cathodic protection of vessels comprising the reserve fleet, and to have sole and exclusive use of all riparian rights fronting on said premises.

*Id.* at 15 (paragraph 6 of the Lease). Over the last several decades, MARAD used the property, now known as the Beaumont Layberth Facility (BLF), for the operation of the Beaumont Reserve Fleet. *Id.* ¶ 5. In March 2012, MARAD awarded McCarthy Buildings, Inc. (McCarthy) a $54 million contract for construction projects at the BLF. *See* Corrected Am. Compl ¶ 10; Defendant's Reply in Support of Its Motion for Leave to File and Amended Answer (ECF No. 119) (Def. Reply) at 2, 11-12, 18. Between 2013 and 2014, MARAD expanded the Beaumont Layberth Facility to provide fixed mooring structures for eight vessels. *See* Corrected Am. Compl. ¶¶ 10-14; Def. Mot. at 19-20 (citing Finding of No Significant Impact (FONSI) for the Beaumont Layberth Facility, 76 Fed. Reg. 19, 523 (Maritime Admin. Apr. 7, 2011)). According to Defendant, MARAD also allegedly constructed improvements on the property including two concrete T-piers and approaches to the piers, as well as utility and electrical services, a potable water system, hotel services, an access road, parking, lighting, security, and other "additional improvements." Corrected Am. Compl. ¶¶ 10-13.

On January 24, 2018, Kudu filed its original complaint, seeking a termination of the Lease. Complaint (ECF No.1) (Compl.). Specifically, Plaintiff alleges that Defendant United States, acting through MARAD, materially breached the Lease. Compl. ¶¶ 15-21; *see also* Corrected Am. Compl. ¶¶ 19-27. Defendant subsequently filed its initial answer on April 2, 2018. Answer (ECF No. 7). Following Defendant's answer, the parties requested, and the Court granted, a 105-day

stay to accommodate settlement discussions. *See* December 14, 2018 Joint Motion for Stay (ECF No. 13); December 18, 2018 Order (ECF No. 14). The parties were unsuccessful in their settlement efforts and subsequently resumed discovery. *See* June 21, 2019 Joint Status Report (ECF No. 21).

On September 20, 2019, Defendant filed a motion to dismiss. *See* Defendant's Motion to Dismiss (ECF No. 28). After full briefing and a January status conference, Plaintiff sought, and the Court granted, leave to file an amended complaint. *See* January 24, 2020 Order (ECF No. 44). In granting Plaintiff's motion for leave to file an amended complaint, the Court denied Defendant's motion to dismiss as moot. *Id.*

Subsequently, Plaintiff filed its amended complaint on February 7, 2020 and a corrected amended complaint on March 11, 2020. *See* Amended Complaint (ECF No. 48) (Am. Compl.); Corrected Am. Compl. (including attachment missing from the Amended Complaint). On February 27, 2020, this action was transferred to the undersigned judge. Shortly after Plaintiff filed its amended complaint, Defendant filed a second motion to dismiss, which this Court denied without prejudice. *See* Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 53); July 28, 2020 Order (ECF No. 79). Subsequently, on August 11, 2020, Defendant filed its answer to Plaintiff's amended complaint. *See* Answer to Amended Complaint (ECF No. 86). The parties are currently scheduled to complete fact discovery by November 22, 2021 and expert discovery by December 6, 2021. *See* January 13, 2021 Order (ECF No. 112). At the time of briefing, no party had yet taken a deposition in the case. Def. Mot. at 4.

On February 25, 2021, Defendant moved to amend its answer to include two affirmative defenses: (1) failure to mitigate damages, and (2) equitable estoppel. *See* Def. Mot. at 10-12. First, Defendant argues it is entitled to add its damage mitigation affirmative defense to conform its answer to newly discovered evidence uncovered during discovery. *Id.* at 1. Defendant alleges that

3

it recently learned through discovery that Plaintiff knew of the project's scope at least one year before the project's completion but failed to object to aspects of the plans. *Id.* at 12-13. Defendant further contends that, Defendant could have addressed Plaintiff's concerns and consequently mitigated any alleged damages had Plaintiff promptly raised objections to the project. *Id.* at 13. Defendant also alleges it is entitled to an equitable estoppel affirmative defense because Plaintiff allegedly "engaged in . . . misleading conduct by failing to raise objections in 2013, at the latest, to the BLF construction project when [Defendant] provided [Plaintiff] with a McCarthy design drawing containing the planned improvements on the leased premises . . . ." *Id.* at 14. Plaintiff opposes the motion, arguing that both defenses are facially meritless and untimely.

## DISCUSSION

Rule 15 of the Rules of the United States Court of Federal Claims (RCFC or Rule(s)) permits a party to amend its pleadings "with the opposing party's written consent or the court's leave," and further states that the court should "freely give leave when justice so requires." RCFC 15(a)(2). It is well-established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court. *Meyer Grp., Ltd. v. United States*, 115 Fed. Cl. 645, 649 (2014) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). The court will ordinarily grant such leave absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . , or futility of amendment[.]" *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

I. <u>Undue Delay</u>

Plaintiff argues that Defendant's proposed amended answer is untimely because Defendant knew the facts underlying these defenses as early as 2019 and could have asserted them at that

4

time.  *See* Pl. Resp. at 18-19.  Additionally, Plaintiff argues that Defendant's motion is untimely because in July 2020 Defendant completed its document production, which contained all relevant documents cited in Defendant's motion.  *Id.* at 19.

In response, Defendant argues that the six-month period between the filing of its August 2020 answer and its February 2021 motion to amend was reasonable.  Def. Mot. at 22; Def. Reply at 5-6.  According to Defendant, after it had filed its August 2020 answer, it received a document production from Kudu in September 2020.  Defendant asserts that this September 2020 production contained documents relevant to its proposed affirmative defenses, and that Defendant timely reviewed these documents to ensure that its proposed affirmative defenses conformed to the evidence received during discovery.  Def. Reply at 5-6.

This Court finds Plaintiff's arguments regarding undue delay unavailing.  "Prejudice is the 'touchstone of the inquiry under rule 15(a).'"  *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1320 (Fed. Cir. 2010) (quoting *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).  Such prejudice is absent here.  Defendant's proposed amendment to its answer is unlikely to affect the current schedule in this action in any respect. Further, granting Defendant's motion would not affect discovery—which is currently ongoing— nor would it require that the parties re-depose any witnesses as depositions have not yet commenced.  Indeed, on January 12, 2021, the parties filed a joint motion requesting a 180-day enlargement of time in which to complete discovery.  *See* Joint Motion to Amend the Discovery Schedule (ECF No. 111) (Joint Mot.).  This Court granted the parties' motion, extending the fact discovery deadline to November 22, 2021 and expert discovery deadline to December 6, 2021. *See* January 13, 2021 Order.  In their joint motion, the parties stated that the enlargement of time would provide sufficient time to "(1) engage in informal settlement discussions; (2) engage in any

potential motion practice governing discovery and [Plaintiff's] amended complaint; and (3) ensure that they possess sufficient time to test their agreed-upon protocol to govern the remote depositions of Government witnesses and to conduct the depositions." Joint Mot. at 1. Accordingly, Plaintiff will not be unduly prejudiced by these amendments because it will have ample opportunity—six months—to conduct discovery to address Defendant's proposed affirmative defenses. *See Katzin v. United States*, 115 Fed. Cl. 618, 621 (2014) (finding no undue prejudice where non-moving party had an "opportunity to conduct additional fact discovery between the time this motion was filed and the scheduled close of fact discovery"); *Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51, 62-63 (2017) (finding that party was not unduly prejudiced where discovery had not yet concluded, no summary judgment motions had been filed, trial had not been scheduled, and several enlargements of time regarding discovery deadlines had been granted); *Northrop Grumman Sys. Corp. v. United States*, 137 Fed. Cl. 677, 685-86 (2018) (granting the Government's Rule 15(a) motion to add a failure to mitigate affirmative defense, as well as six other affirmative defenses, at the end of discovery, "conclud[ing] that there is no real prejudice to plaintiff in allowing the new defenses").

Nevertheless, Plaintiff argues that this Court should deny Defendant's motion because (i) Defendant purportedly knew of the facts of its proposed underlying defenses as early as 2019 and, (ii) by July 2020, Defendant allegedly possessed all the documents cited in the present motion. Pl. Resp. at 19.

In determining whether delay alone warrants the denial of leave to amend, a court may consider whether the moving party's delay was justified under the circumstances of the case. *See Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1364-65 (Fed. Cir. 2013) (citing 6A Charles Alan Wright et al., Federal Practice and Procedure § 1510, at 208–09 (2d ed.1990) (noting that

"supplemental pleading will not be permitted" where "the moving party is guilty of inexcusable delay")). Plaintiff relies on *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) for the proposition that a significant delay alone warrants the denial of an amendment, particularly when the relevant facts for the amendment were known at the time of a prior filing. Pl. Resp. at 18-19.

*Te-Moak Bands of W. Shoshone Indians of Nevada* is inapposite here. In *Te-Moak Bands,* plaintiffs filed a Takings claim and an accounting claim before the Indian Claims Commission in August 1951. 948 F.2d at 1259. In 1957, the Commission severed the accounting claim from the Takings claim. *Id.* The GSA filed its accounting report in response to the petition in 1968. *Id.* In 1969 and 1973, plaintiffs filed two sets of exceptions to the GSA report. *Id.* On June 29, 1982, the plaintiffs filed additional exceptions to the GSA accounting report; and, on October 7, 1982, the case was transferred to the then-Claims Court. *Id.* In 1987, the defendant moved to dismiss some of the exceptions the plaintiffs had filed in 1982. *Id.* at 1260. The United States Court of Appeals for the Federal Circuit (Federal Circuit) held the plaintiffs' 1982 exceptions were untimely because the plaintiffs had possession of the information underlying its 1982 exceptions in 1974, and nothing in the record had changed in the eight years from 1974 to 1982. *Id.* at 1262-63. The Federal Circuit added that the delay was the result of a "breakdown in the relationship between the [plaintiffs] and their counsel," and thus solely the fault of the plaintiffs. *Id.* at 1263. Thus, *Te-Moak Bands* counsels that it is appropriate to deny leave to amend where the record remained static (in that case for years) and proposed amendments are based on information possessed by the moving party's possession for a significant period of time. *Id.*

In contrast, even assuming *arguendo* that Plaintiff's arguments are correct and Defendant possessed the documents needed to support its affirmative defenses in July of 2020, the eight

7

months between July of 2020 and the filing of its February 2021 proposed answer is nowhere close to the eight-year delay in *Te-Moak Bands of W. Shoshone Indians of Nevada*. Further, as is the case here, absent a determination of prejudice, a significant delay is one that is "measured in years." *Meyer Grp., Ltd.*, 115 Fed. Cl. at 649 (quoting *Cooke v. United States*, 79 Fed. Cl. 741, 742 (2007)); *see also Cencast Servs., L.P.*, 729 F.3d at 1363-64 (affirming the trial court's holding that delay was unreasonable when the plaintiff failed to raise its newly pleaded theory for over fifteen years after it was aware of the theory and five years after it could have first raised the theory in response to a government counterclaim); *Shell Oil Co. v. United States*, 123 Fed. Cl. 707, 727 (2015) (finding that the government's proposed amendments were untimely and prejudicial to the plaintiffs when they were brought seven years after its original answer and when the government was aware of the facts giving rise to the defense more than twenty years before filing its motion for leave), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018); *Rockwell Automation, Inc. v United States*, 70 Fed. Cl. 114, 124 (2006) ("[T]he government has failed to satisfy its burden of justifying why it took eight years from March 1997 before it sought to add affirmative defenses."). The Court also notes the extraordinary times under which the parties have operated from July 2020 through February 2021 during a global pandemic. In view of the stage of the litigation and examining the generally short timeline from document production to proposed amendment, while working during the pandemic, Defendant's actions are reasonable and do not come close to constituting unreasonable delay.

Accordingly, this Court finds that Defendant did not act with undue delay in seeking leave to amend its answer.

II. Futility

Next, Plaintiff argues that the Court should deny Defendant's Motion because its proposed affirmative defenses are purportedly futile. Pl. Resp. at 7-8. "When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments . . . ." *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 155 (1994). Where a party seeks to amend its answer to include an affirmative defense, the defense should be denied as futile where the affirmative defense is "facially meritless." *Katzin*, 115 Fed. Cl. at 622 (2014); *see also* 6 Wright, Miller & Kane, Federal Practice & Procedure § 1487 (3d ed.).[1]

Defendant seeks to amend its answer to include affirmative defenses of failure to mitigate damages and equitable estoppel. Def. Mot. at 1. Each proposed defense is based upon the Plaintiff's alleged knowledge of the BLF project and Plaintiff's alleged collaboration with MARAD on aspects of the project. *Id.* Specifically, Defendant states that discovery revealed the following:

> (1) in 2013, Kudu sought to benefit from the BLF project by obtaining access to electricity from the electrical substation planned for the BLF project; (2) in 2013, MARAD provided Kudu with a McCarthy design drawing of the BLF project, including the T-piers; and (3) in 2013, Kudu signed a document concurring with the placement of the wetlands mitigation area for the BLF project.

---

[1] In the context of an amendment to add a claim or counterclaim, this Court recently stated that a proposed counterclaim must at minimum satisfy the plausibility standard outlined by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536, 545 (2021). The Supreme Court's decisions in *Twombly* and *Iqbal* did not specifically address the pleading requirements of affirmative defenses and the Federal Circuit does not appear to have addressed the issue. At times, the United States Court of Federal Claims appears to have subjected to a lower standard such motions to amend to add affirmative defenses. *See Katzin*, 115 Fed. Cl. at 622 (allowing affirmative defense of laches where the defense was not facially meritless or frivolous). For purposes of this Order, applying either the facially meritless or plausibility standards produce the same result in the present action.

*Id.* at 24. Defendant argues that such evidence is sufficient to support plausible allegations related to both defenses and therefore is sufficient to support its motion. *Id.* at 24-25.

For the reasons explained below, the Court finds that Defendant's purposed affirmative defense of failure to mitigate damages is futile, while its proposed equitable estoppel affirmative defense is not.

A. Failure to Mitigate Damages

Plaintiff argues that Defendant's proposed amendment of failure to mitigate damages is futile because (i) Plaintiff is seeking lease termination and not monetary damages, and (ii) a duty to mitigate affirmative defense would be applicable only if Plaintiff were seeking monetary damages. Pl. Resp. at 8. Defendant argues that Plaintiff "conflates the damages element of a breach of contract claim with the form of relief it seeks (non-monetary damages)." Def. Reply at 8. Additionally, Defendant points to Plaintiff's amended complaint where, in response to Defendant's 2019 motion to dismiss, Plaintiff amended its complaint to allege that it had been damaged by MARAD's breach. *Id.* at 8-9 (citing Defendant's Motion to Dismiss (ECF No. 28) at 21; Am. Compl.).

Defendant's arguments are unavailing because a defense for failure to mitigate damages is logically incompatible where a party is not seeking monetary damages. Defendant has not cited to any authority to support its novel assertion that a mitigation of damages defense is available to a defendant where, as here, a plaintiff seeks non-monetary damages as a remedy. Indeed, the overwhelming authority surrounding the doctrine demonstrates that the defense is plainly understood as operating to limit recovery of monetary relief. *See e.g., Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373-75 (Fed. Cir. 2005) ("The remedy for breach of contract is damages sufficient to place the injured party in as good a position as it would have been had the

10

breaching party fully performed."); *Robinson v. United States*, 305 F.3d 1330, 1335 (Fed. Cir. 2002) (holding that the government had a duty to mitigate damages and determining the monetary damages owed to the plaintiff); Restatement (Second) of Contracts § 350 (Illustrations 1-23) (1981) (explaining the doctrine in terms limiting recovery of monetary relief). When an affirmative defense is inapplicable to the cause of action, it would be futile for a defendant to pursue. *See Fid. State Bank, Garden City, Kan. v. Bedsworth*, 769 F. Supp. 1196, 1198 (D. Kan. 1991) (denying affirmative defense as futile where defense was inapplicable to plaintiff's cause of action).

Plaintiff states in its amended complaint that it sent an October 31, 2017 letter to the contracting officer identifying alleged breaches of the Lease, and sought to remedy these alleged breaching through "a demand for lease termination." Corrected Am. Compl. ¶ 2. It is undisputed that Plaintiff is not seeking to recover monetary damages for its breach of contract claim. *See* May 13, 2021 Transcript (ECF No. 123) 6:18-21, 8:12-20, 13:11-14:5, 24:2-9. Such a remedy would be unavailable here, however, even if Plaintiff had sought monetary damages in its complaint because this case arises under the Contract Disputes Act (CDA),[2] and Kudu has not submitted a certified claim for monetary damages to the Contracting Officer (CO). *See* Corrected Am. Compl. ¶ 2 (demand for lease termination only); 41 U.S.C. § 7103 (setting forth the requirements for submitting claims to the contracting officer, including the need to certify claims exceeding $100,000); *see also Health Ins. Plan of Greater New York v. United States*, 62 Fed. Cl. 33, 48 (2004) (The CDA "grants jurisdiction to this [C]ourt over a contractor's request for relief only when the action is based on a qualifying claim filed by the contractor and a final decision (or a deemed final decision) by the contracting officer."); *K–Con Bldg. Sys., Inc. v. United States*, 778

---

[2] Although the contract at issue here predates the CDA, both parties agree that the CDA applies. *See* Corrected Am. Compl. ¶¶ 2, 26; Def. Mot. at 8, 20.

F.3d 1000, 1005 (Fed. Cir. 2015). This Court has jurisdiction to entertain claims arising under the CDA only when the claim alleged in a complaint was first presented to the Contracting Officer. *See Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1361 (Fed. Cir. 2007) ("[T]he same claim must be presented to the Court of Federal Claims as was decided by the contracting officer . . . .").

This Court lacks jurisdiction over any claim for relief under the CDA that is categorically different from the relief sought by Plaintiff in its certified claim; a claim for lease termination is categorically different than a claim for monetary damages. *See e.g.*, *Canpro Investments Ltd. v. United States*, 130 Fed. Cl. 320, 340 (2017) (finding that a certified claim seeking, *inter alia*, lease termination sought a different remedy than a complaint seeking recission and/or termination). Accordingly, this Court lacks jurisdiction to entertain a claim for monetary damages in this action and concomitantly lacks jurisdiction to decide an affirmative defense for failure to mitigate damages. Where a court does not have jurisdiction over proposed affirmative defense, that affirmative defense is considered futile. *See Auld v. United States*, No. 15-429, 2020 WL 4199964 at *9 (Fed. Cl. July 16, 2020) (holding plaintiff's amended complaint futile because court lacked jurisdiction over claims); *see also Marchena v. United States*, 128 Fed. Cl. 326, 330 (2016), *aff'd*, 702 F. App'x 988 (Fed. Cir. 2017) ("A proposed amendment is futile if it would not survive a motion to dismiss." (citation omitted)).

For these reasons, Defendant's proposed affirmative defense of failure to mitigate damages is denied on futility grounds.

    B. <u>Equitable Estoppel</u>

Plaintiff argues that Defendant's proposed affirmative defense of equitable estoppel is similarly meritless. Pl. Resp. at 10-18. This Court disagrees. To adequately plead equitable

12

estoppel, a party must allege: "(1) misleading conduct, which may include not only statements and actions but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *Mabus v. General Dynamics C4 Systems, Inc.*, 633 F.3d 1356, 1359 (Fed. Cir. 2011) (citing *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992)).[3] As explained below, Defendant has adequately alleged each of the three equitable estoppel elements.

   1. Misleading Conduct

Defendant argues that it was misled by Plaintiff through Plaintiff's failure to object when it first learned of the BLF project. Def. Mot. at 14. In response, Plaintiff argues that it did not know the extent of Defendant's BLF construction project. Pl. Resp. at 11.

As evidence of Plaintiff's purported failure to object, Defendant points to emails between the parties regarding the project. Def. Mot. at 14. Additionally, Defendant highlights the time at which Plaintiff signed a "concurrence document" required by the third-party construction company, which recorded Plaintiff's concurrence in the construction project. *See id.* (citing

---

[3] Defendant applies the three-element equitable estoppel rubric outlined in *Mabus*. Def. Mot at 11-12. However, Plaintiff provides a four-element definition. Pl. Resp. at 10. Plaintiff states that the elements of equitable estoppel are:

> 1) the party to be estopped (Kudu) must know the facts; 2) the party to be estopped (Kudu) must intend, or act in a manner that the other party (the Government) has reason to believe it intends, for its conduct to be acted on; 3) the party asserting estoppel (the Government) must be ignorant of the true facts; and 4) the party asserting estoppel (the Government) must rely on the other party's conduct to its injury. *See American Airlines, Inc. v. United States*, 77 Fed. Cl. 672, 679 (2007) (citing *Boeing Co. v. United States*, 75 Fed. Cl. 34, 48 (2007)); *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).

Pl. Resp. at 10-11. The Federal Circuit's decision in *Mabus* cited by Defendant controls here. In *Mabus*, the Court rejected the four-element equitable estoppel test, cited by Plaintiff, in favor of the three-element test. 633 F.3d at 1361.

KUD0000319). Plaintiff disputes Defendant's assertion that Plaintiff approved the construction project. Pl. Resp. at 11-12. Plaintiff acknowledges that the lease allows for "certain limited improvements;" however, Plaintiff contends it was not aware of the full nature and extent of the improvements Defendant was planning. *Id.* Additionally, Plaintiff cites evidence that Plaintiff expressed concern about the nature and extent of the improvements during construction. *Id.* at 13. Specifically, Plaintiff cites documents that allegedly show that "(1) [Plaintiff] allowed for surveying and easement rights of adjacent lands for the purposes of building an access road to the site . . . ; (2) [Defendant] provided [Plaintiff] with a design of the access road showing the T-piers . . . ; and (3) [Plaintiff] was interested in obtaining electricity from a proposed nearby electrical substation that would provide electricity to the site, when [Defendant] is the one that identified [Plaintiff] as a 'potential customer' . . . ." *Id.* at 12 (citations omitted).

Defendant has made a sufficient showing of Plaintiff's knowledge of the BLF project. Plaintiff's argument that it was unaware of the nature and extent of Defendant's construction project does not render Defendant's affirmative defense facially meritless. Rather, the parties' arguments demonstrate that issues of fact exist surrounding the proposed defense, and such issues are inappropriate to resolve at the motion to amend stage.

2. Reliance on Allegedly Misleading Conduct

Next, Defendant argues that in continuing the BLF construction project to completion, it relied on Plaintiff's allegedly misleading conduct (whether by action or omission). Def. Mot. at 15. Defendant contends that, had Plaintiff objected to the continuation of the BLF construction project, Defendant would have issued a stop-work order and worked with Plaintiff to address any concerns. *Id.* In response, Plaintiff claims that it "had no duty to speak or raise any objections to [Defendant] with regard to any breach of the Lease, and its silence was certainly not the basis of

14

any reliance of [Defendant] for the continuation of its project." Pl. Resp. at 15. In support of its position, Plaintiff cites *International Industrial Park, Inc., v. United States*, 100 Fed. Cl. 638, 655 (2011) for the proposition that "mere silence alone without any statement that the plaintiff was abandoning his contractual rights cannot justify equitable estoppel." Pl. Resp. at 15.

This argument fails for two primary reasons. First, *International Industrial Park* is distinguishable because the court reached its equitable estoppel holding after trial, not at the motion to amend or pleading stages. 100 Fed. Cl. at 641-42. Moreover, *International Industrial Park* did not decide that silence could never be relied upon as a matter of law. Instead after reviewing conflicting testimony, the court held that the contractor employee's statements did not support Defendant's equitable estoppel defense. *Id.* at 655. Second, Defendant does not premise its equitable estoppel defense on Plaintiff's silence but instead claims that the evidence will show that Plaintiff expressly concurred with aspects of the project and sought to benefit from the project. Def. Mot. at 12, 14; Def. Reply at 2, 11, 15. Accordingly, contrary to Plaintiff's assertions, Defendant has adequately alleged the reliance element of equitable estoppel.

### 3. Material Prejudice Due to Reliance

Finally, Defendant argues that it is materially prejudiced by its reliance on Plaintiff's allegedly misleading conduct. Def. Mot. at 15; Def. Reply at 11-12. According to Defendant, the BLF construction project cost $54 million. Def. Reply at 12. Defendant points to Plaintiff's assertions that the $54 million in improvements allegedly should revert to Plaintiff upon resolution of a successful breach of contract claim and contends that such a reversion would materially prejudice Defendant. *Id.* (citing Plaintiff Kudu Limited II, Inc.'s Response to Defendant's Objection to Plaintiff's Certification of Fees and Costs (ECF No. 113) at 5). Plaintiff does not directly respond to the substance of Defendant's material prejudice argument except to conclude

15

that Defendant "was not 'materially prejudiced.'" Pl. Resp. at 17. Defendant clearly has a colorable argument that it would be materially prejudiced if it lost its $54 million investment via reversion to Plaintiff. *See Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1360 (Fed. Cir. 2008) ("Economic [material] prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." (quoting *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992), *abrogated by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017))).

In sum, Defendant's proposed amended answer contains sufficient factual bases to state a claim that is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662 678 (2009).

## CONCLUSION

For the reasons stated, Defendant's Motion for Leave to File Amended Answer (ECF No. 117) is **GRANTED in part** with respect to its affirmative defense of equitable estoppel and **DENIED in part** with respect to its affirmative defense of failure to mitigate damages.

IT IS SO ORDERED.

                                                    s/Eleni M. Roumel
                                                    ELENI M. ROUMEL
                                                    Judge

May 24, 2021
Washington, D.C.